[Nos. 20660-9-II; 21797-0-II.    Division Two.    May 7, 1999.]

*In the Matter of the Marriage of* CARLA HALL MATTSON, *Respondent,* and MICHAEL DANE MATTSON, *Appellant.*

*Andrew Robert Hay*, for appellant.

*James Anthony Lopez* of *Lowenberg Lopez & Hansen*, for respondent.

Hunt, J. — Michael Mattson appeals two Pierce County Superior Court actions affecting his child support obligations: (1) an upward adjustment of his support obligation, denial of his request for reimbursement of day-care expenses, and a $1,000 attorney fee award to his former wife, Carla Hall; and (2) denial of his petition to modify support based on his voluntary underemployment, and a $3,000 attorney fee award to Hall. We consolidated these appeals.

Holding that the trial court did not abuse its discretion, we affirm.

## FACTS

Carla Hall and Michael Mattson were married on December 13, 1980. They had two children: MBM, a boy, born July 18, 1982, suffers from Asperger Syndrome, affecting his emotional and social awareness; and HJM, a girl, born April 14, 1985. They separated on December 31, 1987. Their marriage was dissolved on October 26, 1989. The children reside with Hall. Hall holds a BA degree and was working as an accountant during the proceedings below.

Mattson is a doctor of optometry. Beginning in 1985, he practiced optometry under an agreement with Cole Vision, which operates vision clinics within several Sears department stores. During the initial dissolution proceedings in 1989, Mattson and Cole Vision ended their contractual relationship, which had generated at least $80,000 per year for Mattson. The trial court imputed income to Mattson based on his experience, employment history, training, and education. The court ordered Mattson to pay $400 per month child support beginning in July 1989, increased to $1,000 per month beginning in October 1989. Mattson could seek a reduction from this increase by showing that

he was not voluntarily unemployed. Hall and Mattson were to share equally the children's medical expenses, including insurance premiums not paid by an employer.

## I. First Appeal

On November 20, 1990, Mattson filed a petition for modification of child support. He was then employed as the lessee of Pearle Express, a vision clinic in Puyallup. Mattson's 1989 income had been between $2,500 and $3,000 per month. He projected that his 1990 annual income would be $53,390, with a net monthly disposable income of $2,990. He contended that his child support obligations imposed a "severe economic hardship" and "must be modified." He also asked the court to modify the residential schedule so that he would have the children every Sunday rather than every other weekend.

The trial court entered a modification order on December 18, 1991, reducing Mattson's monthly support payment to $851 per month, of which $698 was his basic child support obligation and $153 was his share of special child-rearing expenses. The court also ordered Mattson to pay Hall for his share of any unreimbursed medical expenses that she validly incurred on behalf of the children.

On June 6, 1995, Hall filed a motion for adjustment of support, asserting that her income had changed and that MBM was now twelve, which placed him in a different age category for support calculations. In addition, Hall asked that the court order Mattson to reimburse her for medical expenses owed under the 1991 order and to award her attorney fees.

In his response declaration, Mattson: (1) represented his 1994 income as $2600 per month; (2) asked the court to set child support at $772 per month; (3) asserted that Hall had provided no proof of medical expenses; (4) argued that the

children did not need day care,[1] (5) claimed that he would pay these expenses only if Hall provided documentation; and (6) contended that Hall should not be awarded attorney fees because she was not financially needy and had disclosed $22,000 as an asset.

Hall provided documentation of medical expenses. She also declared that: (1) in 1995, she had spent at least $1,500 for day care, which included YMCA camps, soccer camp, basketball camp, music/art/drama camp, and other various day activities during the spring, summer, and Christmas vacation periods while she worked; (2) she had routinely forwarded the medical information to Mattson; (3) her income had changed since she filed for the adjustment; (4) the $22,000 was a refinance/remodel loan for necessary repairs on her 1908 vintage home; and (5) the income figure Mattson provided was questionable.

Mattson filed a second declaration, asserting that: (1) because he had so little time to prepare the first declaration, he had made a mistake computing his income; (2) his 1994 income was actually $4,371 per month; (3) his 1995 income was actually $3,005 per month; and (4) his support obligation should be $886, based on his 1995 earnings, or $1,156, based on his 1994 earnings. He suggested that the court average the two and award $1,021 per month as child support. Mattson objected to paying for day care because: (1) the children, ages 11 and 13, were old enough to care for themselves after school; (2) the camps that the children attend during vacations were not traditional day care and he should not be forced to pay; (3) he and his current wife were willing to provide day care in his home, and "[i]f the mother chooses to forego this generous offer, she should assume the cost of her choice"; (4) since Hall had not proven that the children needed day care, Mattson should be reimbursed $4,743 of the special child-rearing costs ordered in 1991,[2] (5) the issue of medical expense reimbursement

[1]Mattson apparently refers to the $153 per month special child-rearing costs, which may include day care, but were listed on the child support form as education expenses.

[2]Mattson asserts an overpayment of day-care costs.

was not properly before the court on a motion to adjust support; and (6) in light of Hall's $22,000 cash asset, he should not be required to pay her attorney fees.

On March 14, 1995, a Pierce County Superior Court commissioner conducted a hearing. Mattson argued that the support adjustment should be based on his 1994 income or, alternatively, on his 1995 income to date. The commissioner was skeptical of Mattson's income figures and questioned Mattson's $5,910 quarterly tax payments for 1995. When Mattson's attorney replied that Mattson earned $50,000 in annual net income, the commissioner replied, "You don't pay $25,000 in taxes on $50,000 a year income, [counsel]." Nonetheless, the commissioner ultimately gave Mattson the benefit of the doubt, accepted his income figure of $4,373 per month,[3] and awarded Hall $1,000 in attorney fees. Acknowledging that it was difficult to "get a handle" on self-employment income, the commissioner noted that Mattson had fully disclosed his income only after Hall had "continued to scrutinize further and further."

Hall told the commissioner that: (1) the children needed to be somewhere during vacations while Hall was working; and (2) based on the $1,500 yearly expense, Hall asked for $125 per month for child care. The commissioner agreed with Hall that the children needed to be somewhere during vacations, and given the life-style of the parties, it was entirely reasonable to allow $125 per month to cover a variety of activities. The commissioner advised Mattson that the proper method for recouping undocumented day-care expenses would be a petition to modify child support. The commissioner instructed Hall and Mattson to settle their differences over the unreimbursed medical expenses and ruled that any unpaid monthly agreed amount would become a judgment on which interest would accrue.

On March 14, 1996, the commissioner: (1) entered the

---

[3]The commissioner noted that Mattson had first represented his income as $2,610, then $3,005, and finally, at the hearing, as $4,373 per month.

order adjusting support and set Mattson's monthly support obligation at $1,265.38; (2) granted Hall $1,000 in attorney fees; (3) denied Mattson's claim for past day-care reimbursement; (4) noted that judgment was entered for past medical expenses in an amount to be determined by further hearing or trial; and (5) incorporated the verbatim report of the hearing as additional findings.

On March 21, 1996, Mattson filed a motion for revision of the March 14, 1996, order, challenging the attorney fee and day-care awards. A superior court judge denied the motion, and Mattson appealed.

## II. SECOND APPEAL

Three months later, on July 16, 1996, Mattson filed a petition for support modification, asserting that he had lost his job, he had irreconcilable differences with Cole Vision, the company had terminated their arrangement, his gross current monthly income was $4,500, and the children, ages 14 and 11 years old, were no longer in need of day care.

Hall responded that: Mattson's petition was an effort to avoid his obligations under earlier child support orders; further discovery was necessary to determine whether Mattson's reduction in income was a result of voluntary underemployment;[4] and Mattson's unemployment was strikingly similar to his previous unemployment during their dissolution. The superior court commissioner entered his findings and conclusions on February 4, 1997, finding no substantial change of circumstances because Mattson was voluntarily underemployed, and awarding Hall $3,000 in attorney fees.

Mattson filed a motion for revision, challenging both the finding that he was underemployed and the attorney fee award. The trial court denied the motion and Mattson ap-

---

[4]Mattson claimed that Cole Vision had terminated him because he refused to work Sundays for religious reasons and refused to participate in certain insurance plans.

pealed. His second appeal was consolidated with the first appeal.

## ANALYSIS
### I. STANDARD OF REVIEW

██ We will uphold a trial court's decision regarding child support unless there was a manifest abuse of discretion. We uphold findings of fact supported by substantial evidence. *In re Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990); *In re Marriage of Crosetto*, 82 Wn. App. 545, 560, 918 P.2d 954 (1996).

### II. DAY CARE

██ Basic child support does not generally include daycare expenses; but the court has discretion to order necessary and reasonable expenses, shared in the proportion otherwise applicable to the parties' child support order. RCW 26.19.020, 26.19.080(3), (4); *In re Johnson-Skay*, 81 Wn. App. 202, 204, 913 P.2d 834 (1996). The statute does not define "day-care" expenses or provide guidelines for determining what types of expenses are "reasonable and necessary." In the absence of such definition, we interpret the language consistently within the overall purpose of the statutory framework. *Anderson v. Morris*, 87 Wn.2d 706, 716, 558 P.2d 155 (1976).

██ The Legislature explained its intent for child support statutes in RCW 26.19.001.[5] Child support is designed with the primary goal of preventing a harmful reduction in a child's standard of living, in the best interests of children

---

[5]RCW 26.19.001 provides:

Legislative intent and finding. The legislature intends, in establishing a child support schedule, to ensure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living. The legislature also intends that the child support obligation should be equitably apportioned between the parents.

The legislature finds that these goals will be best achieved by the adoption and use of a state-wide child support schedule. Use of a state-wide schedule will benefit children and their parents by:

whose parents are divorced. *In re Marriage of Oakes*, 71 Wn. App. 646, 649-50, 861 P.2d 1065 (1993). In light of this important legislative goal, we interpret the terms "necessary and reasonable expenses" and "day care" in a manner that serves the best interests of children. *See also,* RCW 26.09.002 ("In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities.").

## A. CAMP

Here, the trial court reasonably found that $125 per month (amortized) for day-care expenses was reasonable and necessary because Hall provided supervised activities for HJM and MBM during times when they were not in school. Hall was required to work outside the home and, as custodial parent, she bore responsibility for supervising the children. Her decision to enroll them in camps, as a type of "day care" when she was at work, was reasonable. As the trial court observed:

> I certainly accept the argument that these children do have to be someplace. And given the income of these parties, it's likely that their life-style would include allowing their children to go to summer camps, allowing their children to participate in a variety of sports activities that I'm going to find are warranted in this regard.

Mattson's argument, that HJM and MBM were old enough, at 11 and 13, respectively, to care for themselves, is not persuasive. Even if their physical health and maturity might enable them to avoid harm without an adult

---

(1) Increasing the adequacy of child support orders through the use of economic data as the basis for establishing the child support schedule;

(2) Increasing the equity of child support orders by providing for comparable orders in cases with similar circumstances; and

(3) Reducing the adversarial nature of the proceedings by increasing voluntary settlements as a result of the greater predictability achieved by a uniform state-wide child support schedule.

present, complete lack of adult supervision during school vacations would not be in their best interests.[6] The trial court did not abuse its discretion in ordering Mattson to contribute to such child care expenses.

## B. REIMBURSEMENT OF DAY-CARE COSTS

■ Citing a 1996 amendment to RCW 26.19.080(3), Mattson argues that he should be entitled to reimbursement of day-care costs for which Hall provided no documentation. The 1991 support modification order included a $243 special child-rearing expense listed as "Education Expenses"; Mattson's share of this obligation was $153.09.[7] Mattson argues that he is entitled to reimbursement for the past 31 months because Hall did not prove that she spent $153.00 per month on day care.

Division One held that the 1996 amendment to RCW 26.19.080(3) was remedial and could be applied retroactively. *Marriage of Hawthorne*, 91 Wn. App 965, 968-69, 957 P.2d 1296 (1998). Noting that the Legislature regarded the amendment as "a long overdue clarification of the law," the court reasoned that the amendment "merely clarifies the procedures the obligor may use to recoup payments made for daycare expenses which are not incurred, it is a remedial statute." *Id.* at 968, 969. The court also noted that a common law equitable right to reimbursement existed under certain specific circumstances before the amendment of RCW 26.19.080. *Id.* at 968.

But Mattson made no arguments based in equity; he merely asserted that because Hall had not proven she spent $153 per month on day care, she should repay that money

---

[6]Mattson's argument, that he or his current wife would supervise the children during summer months, is inconsistent with RCW 26.09.260, which requires that a motion to modify the parenting plan be submitted in order to change the children's residential schedule, including their primary residence.

[7]According to the worksheet, Mattson's total support obligation was $851.13; $698.04 was the basic child support obligation, and $153.09 was the court-ordered special child-rearing expenses.

to Mattson.[8] When the court asked Mattson to support his argument with case law, he replied that it was simply a question of whether Hall could substantiate the previous day-care expense apportioned between the parties by the 1991 support order. The court noted that if Mattson wanted to change a support obligation, he should file a motion to modify the child support order. Where Mattson was unable to support his request for reimbursement of expenses with legal authority, the court did not abuse its discretion by denying his request for reimbursement of day-care expenses.

### III. CHANGE OF CIRCUMSTANCES REGARDING MATTSON'S INCOME

■ We will affirm a trial court's determination of whether a substantial change of circumstances justifies modification of child support, unless there has been an abuse of discretion. *Lambert v. Lambert*, 66 Wn.2d 503, 508, 403 P.2d 664 (1965).

■ A parent may file a motion to modify child support payments based on a substantial change of circumstances, under RCW 26.09.170. But subsection (6) of the statute provides: "An obligor's voluntary unemployment or voluntary underemployment, by itself, is not a substantial change of circumstances."

According to RCW 26.19.071(6),

The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation. . . .

In *Lambert*, 66 Wn.2d at 508-10, the court held that a

[8]Mattson could not argue that RCW 26.19.080 was retroactive because it had not yet been amended.

self-induced decline in income is not an exceptional change in circumstance warranting a reduction in child support. The father in *Lambert* argued that child support should be reduced because he was pursuing self-employment by running his own optometrist business; the business was not generating as much income as he could have earned elsewhere. The court upheld the trial court's rejection of the child support modification, holding that: "Voluntary reduction in income or self-imposed curtailment of earning capacity, absent a substantial showing of good faith, will not constitute such a change of circumstances as to warrant a modification." *Lambert*, 66 Wn.2d at 510; *see also Fox v. Fox*, 87 Wn. App. 782, 784, 942 P.2d 1084 (1997); *In re Marriage of Curran*, 26 Wn. App. 108, 110, 611 P.2d 1350 (1980); *Carstens v. Carstens*, 10 Wn. App. 964, 968, 521 P.2d 241 (1974).

Mattson argues that he should have the freedom to change jobs for his own satisfaction, regardless of his child support obligation. But the Legislature's intent for child support statutes contradicts Mattson's position. RCW 26.19.001 and the rest of the statutory framework show that the Legislature intended the best interests of children to be the paramount priority. *See In re Marriage of Oakes*, 71 Wn. App. at 649-50. Appellate courts have held that even where a parent has lost all income, the trial court may order that child support be paid from liquidation of other financial assets. *In re Marriage of Blickenstaff*, 71 Wn. App. 489, 493, 859 P.2d 646 (1993); *see also Carstens*, 10 Wn. App. at 968.

Here, Mattson had an ongoing contractual relationship with Cole Vision for leasing an optometry clinic. Mattson contends that he had no choice but to break the agreement because the lease terms included working Sundays and his religious beliefs precluded him from working on Sundays. Mattson's "chafing" against this condition was self-imposed because he signed the lease (despite his religious convic-

tions), which contained this provision.[9] A self-imposed reduction of income does not constitute a substantial change of circumstance under *Lambert*, unless Mattson makes a showing of good faith. Here, Mattson's voluntary underemployment came on the heels of the increased child support ordered by the court just a few months earlier. Under these circumstances, we agree with the trial court's conclusion that Mattson's loss of income was voluntary and that his timing advanced his desire to his reduce child support payments. *Lambert*, 66 Wn.2d at 508-10. We hold that the trial court did not abuse its discretion when it imputed income to Mattson.

## IV. ATTORNEY FEES
### A. AT TRIAL

■■ An award of attorney fees is within the trial court's discretion. *Crosetto*, 82 Wn. App. at 563; *In re Marriage of Knight*, 75 Wn. App. 721, 729, 880 P.2d 71 (1994), *review denied*, 126 Wn.2d 1011 (1995). The party challenging the award must show that the court used its discretion in an untenable or manifestly unreasonable manner. *Knight*, 75 Wn. App. at 729. Under RCW 26.09.140, the trial court can order a party in domestic relation actions to pay reasonable attorney fees, but generally the court must balance the needs of the party requesting the fees against the ability of the opposing party to pay the fees. *Crosetto*, 82 Wn. App. at 563 (citing *Knight*, 75 Wn. App. at 729).

But if intransigence is demonstrated, the financial status of the party seeking the award is not relevant. *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989). A party's intransigence can substantiate a trial court's award of attorney fees, regardless of the factors enunciated in RCW 26.09.140; attorney fees based on intransigence are an equitable remedy. *Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992).

---

[9]The regional sales manager for Cole Vision explained the factors leading to Mattson's lease termination: (1) a large number of eyeglasses had to be remade; (2) he refused to follow the office hours mandated by the contract; and (3) he refused to participate in the company's Vision Care Program.

Hall argues that the trial court's fee awards are supportable on three separate grounds: (1) Under RCW 26.09.140, the court can award fees based on the financial status of the parties; (2) if intransigence is present, the court may award fees; and (3) under RCW 26.18.160, the court may award fees in an action to enforce a support order.

The trial courts in both cases found that Mattson's resources substantially exceeded Hall's. Hall demonstrated her financial need and gave the trial courts full accounting for fees owed to her counsel. Under RCW 26.09.140, the trial courts properly exercised discretion in deciding that attorney fees should be awarded to Hall.

Moreover, the record in the first appeal demonstrates intransigence and obstruction by Mattson. In the 1995 motion for adjustment, he produced conflicting information about his income and, by his actions, forced Hall to conduct intense discovery, which increased her legal bills. The trial court specifically noted that Mattson's reported income increased with each round of investigation by Hall's counsel. Although the trial court did not use the word "intransigence," the court's reasoning demonstrates that the court considered Mattson's intransigence when awarding fees to Hall. *See Greenlee,* 65 Wn. App. at 708; *cf. Crosetto,* 82 Wn. App. at 564-65.

In the 1996 Petition for Modification, the trial court found Mattson to be voluntarily underemployed. Only through persistent discovery did Hall uncover the facts surrounding Mattson's role in the termination of his lease. Although the trial court in the second case did not make an express finding of intransigence, it did find that Mattson was voluntarily underemployed, which constitutes intransigence. Hall documented her attorney fees to the court, which awarded slightly less than the requested amount.

## B. ON APPEAL

Intransigence is a basis for awarding fees on appeal, separate from RCW 26.09.140 (financial need) or RAP 18.9 (frivolous appeals). *Chapman v. Perera,* 41 Wn. App.

606

444, 455-56, 704 P.2d 1224, *review denied* 104 Wn.2d 1020 (1985). The financial resources of the parties need not be considered when intransigence by one party is established. *Marriage of Greenlee*, 65 Wn. App. at 711; *Morrow*, 53 Wn. App. at 590. Moreover, a party's intransigence in the trial court can also support an award of attorney fees on appeal. *Eide v. Eide*, 1 Wn. App. 440, 445-46, 462 P.2d 562 (1969); *Perera*, 41 Wn. App. at 456.

The record reflects Mattson's incremental disclosure of his income, when prodded, and his less than candid portrayal of his contract termination with Cole Vision, both of which support a finding of intransigence. Thus, although Hall has not filed an affidavit of financial need under RAP 18.1(c), the record supports Mattson's intransigence; thus, we need not consider Hall's resources. Based on Mattson's intransigence at trial and his appeal of that outcome, we award Hall her attorney fees and costs on both appeals, provided that she complies with RAP 18.1(d).

Affirmed.

ARMSTRONG, A.C.J., and HOUGHTON, J., concur.