# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
)
JOSEPH THOMAS ROHDE, )
)
    Respondent/Cross Appellant, )
)
and )
)
SHUDAN ZHU ROHDE, )
)
    Appellant/Cross Respondent. )

No. 69442-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 31, 2014

GROSSE, J. — When the record supports a finding that a parent's bonus income was non-recurring, the decision to exclude it from the child support calculation is within the trial court's discretion. Accordingly, we affirm.

## FACTS

Joseph (Joe) and Shudan (Danni) Rohde[1] were married in 2003. They have two children, J.R. and N.R., ages 6 and 3 at the time of trial. The couple separated in June 2011 and Joe petitioned for dissolution shortly thereafter.

When the parties married, Joe was employed with Microsoft. He later took a position as a software developer with Valve Software in July 2009, where he currently works. In addition to his base annual salary of $185,000.00, Joe received discretionary bonuses in varying amounts.

Danni was born in China and came to the United States in 1997. She earned a four year degree in China and after arriving in the United States, studied accounting at Seattle Central Community College. When the parties

---

[1] The parties will be referred to by their first names to avoid confusion.

married, Danni worked for a small stone import business and then as a bookkeeper for Stonepath Logistics, earning approximately $29,000.00 annually. She eventually left Stonepath and was admitted to the accounting program at the University of Washington. At that time, she was pregnant with the parties' first child and never enrolled in the program. She has since not worked outside of the home.

The older son, J.R., was born in May 2006 and N.R. was born in September 2009. J.R. has been diagnosed with high functioning autism and has been receiving services for this condition since 2008. J.R. also attended day care since he was two years old in an effort to provide more peer social experiences for him, which Danni was advised would be very helpful for his autism. While J.R. was in day care, Danni was also caring for N.R. who was a newborn at the time. N.R. also eventually attended day care in some capacity.

After a trial, the court ordered a parenting plan that designated Danni as the primary residential parent, giving Joe 6 out of 14 overnights with the children. The court also ordered that Joe make a child support transfer payment of $1,503.20 based on a monthly net income of $7,695.59. Additionally, the court ordered Joe to make monthly maintenance payments to Danni in the amount of $4,500.00 for 36 months. The court conditioned the maintenance award on Danni being enrolled in school full time by January 2013, working toward her accounting degree.

On September 30, 2012, the trial court denied Danni's motion for reconsideration and motion for a new trial. Danni appeals. Joe filed a conditional cross appeal. Pending the appeal, in February 7, 2013, Danni and

Joe entered into a CR 2A agreement that provided that maintenance would be paid without the requirement that Danni attend school so long as Danni resides inside Creekside school district boundaries and J.R. attends Creekside schools.

## ANALYSIS

### I. Child Support

Danni contends that the trial court erred by failing to include Joe's discretionary bonuses as part of his gross income for purposes of establishing child support. We disagree.

We review a trial court's decision on child support for a manifest abuse of discretion and will uphold it if supported by substantial evidence.[2] RCW 26.19.071(1) requires that "[a]ll income and resources of each parent's household shall be disclosed and considered by the court when the court determines the child support obligation of each parent." RCW 26.19.071(3)(r) provides that "monthly gross income shall include income from any source, including . . . [b]onuses." But RCW 26.19.075(1)(b) permits a court to deviate from the standard child support calculation if it finds that a source of income, such as a bonus, is nonrecurring. The statute provides:

> The court may deviate from the standard calculation based on a finding that a particular source of income included in the calculation of the basic support obligation is not a recurring source of income. Depending on the circumstances, nonrecurring income may include overtime, contract-related benefits, bonuses, or income from second jobs. Deviations for nonrecurring income shall be based on a review of the nonrecurring income received in the previous two calendar years.[3]

At trial, the evidence showed an annual adjusted gross income of

---

[2] Mattson v. Mattson, 95 Wn. App. 592, 599, 976 P.2d 157 (1999).
[3] RCW 26.19.075(1)(b).

3

$220,679.00 on the parties' most recent tax return, and that Joe received performance bonuses in the past three years: for the first year he received a bonus of $30,000.00, the second year he received $40,000.00, and the third year he received $30,000.00. But there was no evidence that there would be any future performance bonuses and Joe also testified that his performance at work had "become an issue" over the last year.

The trial court set Joe's gross monthly income at $15,416.70, which reflects his base salary of $185,000.00, excluding any bonus. The court set Danni's gross monthly income at $4,500.00, the total amount of monthly maintenance, and did not impute any income to her. The court explained:

> Having set the mother's maintenance at $4,500 and the father's total gross, mother is [sic] $15,416.70. And that reflects a base salary of $185,000. I included as a comment that the father has a variable annual bonus up to $20,000 per year because that needs to be part of the decision making. That works out to a payment per month of $1,151 for [J.R.], $1,151 for [N.R.], which is 65 and 35 percent respectively.
> And I should tell you, I went through this several ways. I did not want to impute income to the mother while she was in school. That seems unfair. . . .

Danni fails to show that the trial court abused its discretion by excluding the discretionary bonuses from Joe's gross annual income. The court was permitted to do so under RCW 26.19.075(1)(b) based on its finding that the bonus was not recurring. The record supports this finding. The evidence showed that the bonuses were discretionary and performance based, that the amount decreased in the last year, and that there was no certainty that Joe would receive one this year or in the future. Additionally, as Joe notes, the court declined to impute income to Danni even though there was support in the record

4

that she had potential annual earnings of $29,000.00. This was a reasonable trade off for the exclusion of the discretionary bonuses. Danni fails to show that the trial court abused its discretion.

## II. Residential Schedule

Danni next contends that the trial court erred by declining to designate Chinese New Year as her holiday every year. We disagree.

In her proposed parenting plan, Danni requested that the children spend Chinese New Year with her. At trial, the parenting evaluator recommended that Chinese New Year be spent with the mother and American New Year with the father and testified as follows:

> Q: On page 24, you've recommended that Chinese New Year should be spent with the mother each year and the American New Year with the father each year.
> A: Right.
> Q: Is it your understanding that Danni is not an American citizen or is an American citizen?
> A: Well, no. But my understanding is that she wanted Chinese New Year every year.
> Q: So was it something she had to trade, like she can get the Chinese New Year if she has to give up the American New Year?
> A: It just seemed like a good distribution of, an equitable distribution of holidays. I don't think it has anything to do with that.

The issue was raised again during Danni's examination of a witness called to testify about the parent evaluator's bias. Danni argued that the parenting evaluator showed racial/cultural bias in the New Year's recommendation:

> Q: On the issue having to do with New Year's.
> COURT: I think that's a matter for argument. I really do.
> MR. GLASS [Counsel for Danni]: I think it as something very subtle but yet --
> COURT: It's not methodology.
> MR. GLASS: I think it shows bias.
> COURT: You think it shows racial and cultural bias is what you think.

MR. GLASS: Yeah, I do.

COURT: I don't know that it does. It could.

MR. GLASS: Well, let me say I know her. It's not being --

COURT: I don't know if he's going to be able to say that shows racial and cultural bias to give the father New Year's on the 31st of December every year and to give the mother Chinese New Year's. She's an American citizen, she was here, she has American children. You know, is that racial and cultural bias? I think we all probably have our opinions about that.

In the final parenting plan, the court did not include Chinese New Year in the holiday schedule. The court explained:

Then with respect to winter vacation, I dropped out the notion of Chinese New Year's because it is, it falls differently every year. And so if it happens to fall when the kids are with the mom, they spend it with the mom; otherwise not. Because the mother was so aggrieved about not having New Year's, so I did an odd-even with respect to the Christmas holiday and the New Year holiday. So I think that's a more appropriate way. It kind of splits up the Christmas vacation, but I ignored Chinese New Year.

. . . .

I did even/odd on the New Year's and just took out Chinese New Year's because I think it's a source of problems.

Danni fails to show that the court abused its discretion in excluding Chinese New Year. The court did not fail to consider this request as Danni claims; the court considered it in the context of her additional request for American New Year's day. According to the record, Danni wanted every Chinese New Year in addition to the American New Year. Because this would give Danni an additional holiday and it fell differently every year, we cannot say it was unreasonable for the court to decide to alternate the American New Year's day and allow the children to be with whichever parent they happen to be with on the day Chinese New Year falls. Danni fails to show that this attempt to evenly divide the holidays was an abuse of discretion.

III. Maintenance

Danni challenges the court's maintenance award as unreasonably conditioning it on her full-time enrollment in an accounting degree program while caring for young children at home, one of whom has special needs. Both parties acknowledge that they have since entered into a CR 2A agreement that waives this condition so long as Danni resides in the Creekside school district boundaries. In his brief, Joe contends the issue is moot because this court "can no longer provide effective relief."[4] But at oral argument, counsel for Joe conceded that the issue was no longer moot as Danni had in fact moved out of the Creekside school district and was attending school in order to receive her maintenance.

The trial court has broad discretion to award spousal maintenance.[5] The relevant statutory factors the court must consider under RCW 26.09.090, include each party's financial resources; the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; the standard of living during the marriage; the duration of the marriage; and the time needed to acquire education necessary to obtain employment.[6] RCW 26.09.090 places one limitation on the amount and duration of maintenance: the award must be just.[7]

Here, the trial court concluded that the reason for the maintenance was "to help support her education," and conditioned it on her being enrolled full time to

---

[4] Br. of Resp't at 19 (citing State v. Enlow, 143 Wn. App. 463, 470, 178 P.3d 366 (2008)).
[5] Bulicek v. Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990).
[6] RCW 26.09.090; In re Marriage of Vander Veen, 62 Wn. App. 861, 867, 815 P.2d 843 (1991).
[7] In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).

complete her education. The court set the amount at $4,500.00 per month for a duration of three years, the time it would take for her to complete her degree in a full-time program. Considering the relevant statutory factors, Danni fails to show this was an abuse of discretion.

"The purpose of spousal maintenance is to support a spouse, typically the wife, until she is able to earn her own living or otherwise become self supporting."[8] Here, the marriage was relatively short—eight years—and Danni had already received a year of support. She had also previously earned $29,000.00 as a bookkeeper and freight forwarder. Additionally, Danni received a disproportionate share of the marital estate. Thus, the court recognized that she was already capable of supporting herself without maintenance.[9]

Danni contends that the trial court failed to consider the statutory factor of "[t]he time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment."[10] She contends that the court did not explain how she would be able to handle full-time school while being the majority caregiver for an autistic child and a three-year-old. But as Joe points out, the evidence showed that the autistic child was starting first grade four months before Danni was required to start attending school full time, and that she regularly placed both children in day care when she was not working or attending school. Additionally, 6 out of 14 days they did not reside with her. Thus, the record supports the court's finding that she could reasonably attend school full

---

[8] Luckey, 73 Wn. App. at 209.

[9] See In re Marriage of Wright, 78 Wn. App. 230, 238, 896 P.2d 735 (1995) (concluding that "the unequal distribution of property also obviated the need for spousal maintenance as it substantially improved [the wife]'s financial position").

[10] RCW 26.09.090(1)(b).

8

time while the children were either in school or day care for the 8 out of 14 days they resided with her.[11]

IV. Attorney's Lien

Finally, Danni challenges the court's order requiring that her attorney fees be paid out of her portion of the proceeds of the sale of the marital home. She contends that the court denied her due process by not allowing her an opportunity to adjudicate the fee dispute with her lawyer. Joe does not take a position on this issue as he is not a party to this attorney fee dispute.

On August 7, 2012, Danni's lawyer, Allen Glass, filed a motion for judgment on attorney fees and notice of withdrawal. The basis for the motion was that Danni had fired Glass with a balance on attorney fees still owing. On August 8, 2012, Danni filed a response to the motion for judgment, mostly contesting the fees and the quality of Glass's representation.

On August 10, 2012, the court addressed the motion for attorney fees. The court considered the requested fees and determined them to be reasonable. But the court questioned its ability to enter a judgment on the fees and instead stated that it would order the fees to be deducted from the house proceeds allocated to Danni. On August 13, 2012, Glass filed a notice of lien for attorney fees and costs. On August 29, 2012, the court entered the decree of dissolution, which included a provision stating, "Respondent's attorney's lien shall be paid from wife's portion of the proceeds."

RCW 60.40.010, the attorney's lien statute, provides in relevant part:

---

[11] As a practical matter, the fact that she is currently enrolled full time is further evidence that it is not completely unmanageable for her to do so.

(1) An attorney has a lien for his or her compensation, whether specifically agreed upon or implied, as hereinafter provided:

(a) Upon the papers of the client, which have come into the attorney's possession in the course of his or her professional employment;

(b) Upon money in the attorney's hands belonging to the client;

. . .

(d) Upon an action, including one pursued by arbitration or mediation, and its proceeds after the commencement thereof to the extent of the value of any services performed by the attorney in the action, or if the services were rendered under a special agreement, for the sum due under such agreement; and

(e) Upon a judgment to the extent of the value of any services performed by the attorney in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

(2) Attorneys have the same right and power over actions to enforce their liens under subsection (1)(d) of this section and over judgments to enforce their liens under subsection (1)(e) of this section as their clients have for the amount due thereon to them.

RCW 60.40.030 provides:

**Procedure when lien is claimed.** If, however, the attorney claim[s] a lien, upon the money or papers, under the provisions of this chapter, the court or judge may: (1) Impose as a condition of making the order, that the client give security in a form and amount to be directed, to satisfy the lien, when determined in an action; (2) summarily to inquire into the facts on which the claim of a lien is founded, and determine the same; or (3) to refer it, and upon the report, determine the same as in other cases.

As this court noted in <u>King County v. Seawest Investment Associates,</u>

<u>LLC</u>, the statute does not set out a procedure for adjudicating a lien against a

judgment.[12] The court in Seawest held that the statute does not require that such an action be separate from the underlying proceeding.[13] Rather, the question of how to properly adjudicate the lien is placed on the trial court, "requiring it to fashion some 'form of proceeding by which the matters might be properly adjudicated.'"[14] The court further concluded that a trial court complies with due process so long as it gives the client an opportunity to contest the lien and noted that there, the trial court held an evidentiary hearing and determined that the fee agreement was enforceable and the fees were reasonable.[15] The court then held that the procedure followed by the trial court fully complied with due process, acknowledging that the lack of a full adversarial hearing in adjudicating an attorney's lien does not necessarily amount to a denial of due process.[16]

Similarly here, Danni was given an opportunity to contest the lien. She did so and filed a response that made challenges to specific billings and submitted documentation as exhibits. After reviewing the billings, the court made a determination that the fees were reasonable:

> Certainly the fees are reasonable, particularly -- I mean, I looked at the descriptors and I considered the work that you did at trial, the preparation, the post-trial work. And then I looked at the recalculation at 75 percent. And the remaining amount due, which is, I don't know, somewhere between $4,000 and $5,000. That is an appropriate amount. . . .
>
> . . . .
>
> No, I thought the total fee for the work that had been done was

---

[12] 141 Wn. App. 304, 315, 170 P.3d 53 (2007).

[13] 141 Wn. App. at 315.

[14] Seawest, 141 Wn. App. at 315 (quoting State ex rel. Angeles Brewing & Malting Co. v. King County Superior Court, 89 Wash. 342, 345, 154 P. 603 (1916)).

[15] Seawest, 141 Wn. App. at 315-16.

[16] Seawest, 141 Wn. App. at 316.

quite reasonable. And I thought the quality of the work was good because as I said earlier, I got all of the information I needed to make a decision. And it may not be a decision that your client is happy with, but it is the kind of information that I get when I have good lawyers in the courtroom . . . .

Danni fails to show that the trial court's determination denied her due process.

We affirm.[17]

WE CONCUR:

___

17 Joe filed a conditional cross appeal challenging the court's failure to impute income to Danni, which would be raised only if a remand is ordered. Br. of Resp't at 28. Accordingly, because we affirm the trial court, we do not address the cross appeal.