IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In the Matter of the Marriage of  )
)  No.  33355-8-III
MICHELLE L. CUMMINGS,  )
)
Respondent,  )
)
and  )  UNPUBLISHED OPINION
)
DAVID A. CUMMINGS,  )
)
Appellant.  )

SIDDOWAY, J. — David Cummings appeals the trial court's distribution of

property in the dissolution of his and Michelle Cummings's marriage.  He also challenges

a sanction imposed on him for intransigence, in favor of his trial lawyer.  We affirm the

decree of dissolution and refuse to review the sanction because it is challenged on appeal

against the wrong party.

FACTS AND PROCEDURAL BACKGROUND

Michelle and David Cummings had been married for 34 years at the time they

separated in May 2013.  Ms. Cummings moved out of the family home and into an

apartment.  Several months later, she filed a petition for dissolution.

At the time of trial both parties were 58 years old.  Testimony at trial established

that both had college degrees and were fully employed: Ms. Cummings worked as a

director of an assisted living facility, and Mr. Cummings was licensed and worked as a

real estate broker and appraiser. They earned similar incomes. Both claimed to be experiencing health issues that had affected or would affect their ability to make a living in the future. They have two adult children and six grandchildren.

Ms. Cummings had changed jobs frequently and never worked long enough for one employer to establish retirement savings. Mr. Cummings had several retirement accounts, some of which were community property. The value of Ms. Cummings's separate property was minimal, but Mr. Cummings had $75,000 worth of separate property, much of it liquid.

During the marriage, Mr. Cummings had used his broker's license to purchase rental properties for the couple for investment purposes. They owned five pieces of real property at the time of trial: their home in Cheney, and four rental properties in Spokane, one of them a commercial rental. The properties had the following agreed appraised values:

| | |
|---|---|
| Cheney home | $215,000 |
| North Avenue rental | $115,000 |
| Wabash rental | $113,000 |
| Garland rental | $109,000 |
| Dean rental (commercial) | $140,000 |

The appraised values reflected the fact that the North Avenue rental was in average condition overall but needed some maintenance and repair, and that the Wabash and Garland properties were both in poor repair.

Both parties asked the court to award them the family home. One reason Ms. Cummings sought to be awarded the family home was its proximity to the couples' grandchildren, who Ms. Cummings babysat full time for two or three years before the trial and continued to have over to her apartment every weekend. She testified that it was difficult to have her grandchildren and other family visit in her small apartment "plus the noise level for my neighbors is not very nice." Report of Proceedings (RP) at 163. Another reason she asked to be awarded the family home was because she wanted Mr. Cummings to continue to own the rental properties. She testified that owning rentals had been his dream, not hers, and unlike her, he could own and operate them profitably. She said she knew nothing about the rentals, and because she did not know how to manage, maintain, or repair them, she would have to hire a property manager or fix them up to sell them if they were awarded to her.

Mr. Cummings explained that he sought an award of the family home because he had conducted his appraisal business out of the home for the prior eight years and was dependent on its Cheney location for appraisal referrals. He testified he had recently lost a longtime appraisal customer and the only appraisal business he was receiving at the time of trial was from banks, who choose an appraiser based on his or her physical

3

location. He testified he could "[a]bsolutely not" work in other markets the way he did in the Cheney market. RP at 190. Another reason he sought an award of the family home was that he, too, helped out with and wanted to be close to his grandchildren. The evidence supported this reason, although his involvement with the grandchildren had been less extensive than Ms. Cummings's.

Following a several day trial, the court announced its property division. Along with other assets not in contention, it awarded the family home and the Dean property to Ms. Cummings and awarded the other three rental properties, Mr. Cummings's retirement accounts, and his separate property to Mr. Cummings. The value of the community assets it awarded to Ms. Cummings was $378,131 and the value of community assets it awarded to Mr. Cummings was $280,048. It chose not to order an equalization payment in light of Mr. Cummings's significant separate property.

The court ruled that each party would bear its own attorney fees. But as a sanction for what it characterized as Mr. Cummings's intransigence in belatedly disclosing certain assets, it ordered him to pay $1,000 of Ms. Cummings's attorney fees and also ordered him to "pay $1,000 to his own counsel," something the court said, "I have never done . . . before, but it's clear that there was additional work that had to be done over and above preparing for trial just to make sense of a confusing picture." RP at 366.

Mr. Cummings appeals. He has named only Ms. Cummings as a respondent.

## ANALYSIS

The issues on appeal are narrow. Mr. Cummings contends the trial court erred by failing to consider the dissolution distribution factors provided by RCW 26.09.080 in awarding the family home and the Dean property to Ms. Cummings. He argues that the court relied instead on an improper factor: which of the two had a stronger relationship with their grandchildren. He also assigns error to the $1,000 sanction in favor of his trial lawyer.

### *Sanction*

The sanction can be summarily addressed. While the court's oral imposition of the sanction in favor of Mr. Cummings's own lawyer was ambiguous, the written findings and conclusions entered by the court state that "[t]he parties shall be responsible for the payment of the attorney fees and costs each of them incurred in this dissolution action *that are in excess of the $1,000 Mr. Cummings is required to pay* to each attorney." CP at 59 (emphasis added).[1] It appears from this that Mr. Cummings was not ordered to pay his trial lawyer anything more than he owed the lawyer under their fee agreement. If Mr. Cummings nonetheless claims to be aggrieved, his dispute is with his trial lawyer, not with Ms. Cummings.

---

[1] We note that Mr. Cummings's appellate lawyer is not the lawyer who tried the case and in whose favor the sanction was entered.

*Property distribution*

In a marriage dissolution proceeding, all of the parties' property is before the court for distribution and the court's objective is to divide and distribute it "as shall appear just and equitable." RCW 26.09.080; *Farmer v. Farmer*, 172 Wn.2d 616, 625, 259 P.3d 256 (2011). In disposing of the parties' property and liabilities, the court, by statute, "shall, without regard to misconduct, make such disposition . . . as shall appear just and equitable *after considering all relevant factors*." RCW 26.09.080 (emphasis added). Relevant factors include, but are not limited to:

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

*Id.*

A trial court's distribution of property will not be overturned on appeal absent a manifest abuse of discretion. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007); *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989). This is because the trial court is in the best position to assess the assets and liabilities of the parties and determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

6

We reject Mr. Cummings's suggestion that one or both parties' emotional attachment to the family home is irrelevant when a trial court decides how to dispose of it in a dissolution proceeding. The fact that the home is near family members for whom a person provides care is a relevant consideration. The fact that it is easier to care for grandchildren or entertain extended family in a house than a small apartment can be relevant. One reason Mr. Cummings expressed a desire to be awarded the family home was because of its proximity to the couple's children, both because he wanted to help out with his grandchildren and because his son might join him in business in the future. These sorts of reasons for seeking award of a home may be relatively unimportant in many cases, but all of them are relevant. None was improperly considered by the court.

Mr. Cummings argues that the trial court awarded the family home and Dean property without considering the four factors relevant to a just and equitable division of property that are explicitly identified in RCW 26.09.080. The court's written findings and conclusions make no formal findings on those factors, but neither the statute nor case law requires formal findings. It must only be evident from the record that the trial court actually considered all relevant factors. *In re Marriage of Steadman*, 63 Wn. App. 523, 526, 821 P.2d 59 (1991). The record, for that purpose, includes the court's oral decision and its written findings of fact. *In re Marriage of Rink*, 18 Wn. App. 549, 554, 571 P.2d 210 (1977); *cf. Johnson v. Whitman*, 1 Wn. App. 540, 463 P.2d 207 (1969) (oral decision consistent with findings and conclusions may be used to interpret them).

7

After taking the parties' dissolution disputes under advisement for several days following presentation of their evidence and argument, the trial court reconvened the parties to orally announce its decision. It explained at length its findings on contested matters and its decisions on Ms. Cummings's request for maintenance, the parties' requests for awards of attorney fees, the property distribution, and whether to order an equalizing payment. Woven through the court's announcement of its findings and conclusions on these issues were the matters it had considered. It is clear it considered the four specific factors identified by RCW 26.09.080.

As to "the nature and extent of the community property" and "the nature and extent of the separate property," the factors identified by RCW 26.09.080(1) and (2), the court engaged in a complete review of the parties' assets and liabilities, identifying and placing values on those that were community and those that were separate. It also explicitly stated, "The Court considered the nature and extent of the real and personal property, the majority of which was community property." RP at 367-68. Finally, both orally and in its written findings it explained that it was not ordering an equalization payment because of the substantial amount of Mr. Cummings's separate property relative to the community assets.

As to "the duration of the marriage," the factor identified by RCW 26.09.080(3), the court stated, "The marriage is a 34-year marriage, and under those circumstances is

8

expected to accumulate much in the way of community property, and this community did so." RP at 368.

"The economic circumstances of each party at the time of division," the factor identified by RCW 26.09.080(4), received extensive attention in the court's oral ruling. The court recounted the parties' education and work histories in detail. It noted that Ms. Cummings had no retirement assets. It observed, "The economic circumstances of each of the spouses at the time of trial indicated they were both fully employable. Again, at age 58, they were in great careers that had economic potential with lots of great experience with just the minor diminishing, as the Court has indicated before." RP at 368. The court noted that Ms. Cummings had received temporary maintenance prior to trial and reviewed the evidence the parties had presented as to their monthly expenses and the attorney fees they had incurred. It noted Mr. Cummings's testimony that he had lost a major account and stated, "according to [Mr. Cummings's] testimony," that "[h]is income capacity did appear to be somewhat diminishing and his health was slightly declining at the time of trial." RP at 366. The court expressed its view that Mr. Cummings "was going to have to branch out geographically." RP at 369.

After reviewing these statutory factors, together with both parties' testimony about wanting to be awarded the family home to be close to their grandchildren (which we have already found to be a relevant consideration) the court stated, "The factors, then, as the

9

Court has analyzed them above result in the following distribution." RP at 369. It then proceeded to explain how it was dividing the parties' assets and liabilities.

Reviewing the trial court's oral decision as a whole, it is apparent that several things contributed to its decision to award the family home and Dean property to Ms. Cummings. The court observed that if Ms. Cummings were no longer paying rent, then her income could cover her expenses. It observed that Mr. Cummings "was managing the acquisition and operations of several rental properties, hiring a contractor for repairs and maintenance," and that while he had assistance from Ms. Cummings with some financial matters, "the management of these properties were under his general financial direction." RP at 367. It considered both parties' expressed wish to be awarded the family home to be near the grandchildren and made the observation, supported by the evidence, that "Husband's caring for grandchildren was a very recent vintage based on his work flexibility. However, I didn't see an overall history of profound and consistent involvement as was the case with the wife." RP at 368. While Mr. Cummings does not agree, the court expressed its view that Mr. Cummings would need to address his declining appraisal referrals by "branch[ing] out geographically." RP at 369. Finally, the court explained that it awarded the Dean property to the wife because it was the most stable of the rental properties given its long term tenant, and thereby one she could manage. It also explained the award of the Dean property as a way of adjusting for the fact that Ms. Cummings did not have retirement assets, while Mr. Cummings did.

10

It is thus clear that Mr. Cummings's characterization of the trial court's reason for awarding the family home to his ex-wife—that "Mr. Cummings had not created as good a relationship with the grandchildren as Ms. Cummings," Reply Br. at 10—is a gross and unfair simplification. No abuse of discretion in awarding the properties has been shown.

*Attorney fees*

Ms. Cummings requests attorney fees on appeal on three bases: Mr. Cummings's intransigence, that the appeal is frivolous, and her need.

Intransigence is a basis for awarding fees on appeal. *In re Marriage of Mattson*, 95 Wn. App. 592, 605, 976 P.2d 157 (1999). "Intransigence includes foot dragging and obstruction, filing repeated unnecessary motions," or making a proceeding unduly difficult and costly. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 30, 144 P.3d 306 (2006). "[A] party's intransigence in the trial court can also support an award of attorney fees on appeal." *Mattson*, 95 Wn. App. at 606. Ms. Cummings does not demonstrate any intransigence on appeal and Mr. Cummings's earlier intransigence has not affected this appeal, given the narrowly framed assignments of error.

"An appeal is frivolous if the . . . court is convinced that [it] presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). We do not find the appeal to be frivolous.

11

No. 33355-8-III
*In re Marriage of Cummings*

Finally, we may award fees on appeal under RCW 26.09.140 after considering the financial resources of both parties. *In re Marriage of Kile & Kendall*, 186 Wn. App. 864, 888, 347 P.3d 894 (2015). Having considered the financial affidavits as to Ms. Cummings's need and the trial record as to Mr. Cummings's ability to pay, we decline to award fees under the statute.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Fearing, C.J.

Pennell, J.

12