# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Marriage of:

DORIN DUNCA,

        Appellant,

and

ANDREEA DUNCA,

        Respondent.

No. 76235-4-I

DIVISION ONE

UNPUBLISHED

FILED: April 16, 2018

Cox, J. — Dorin Dunca appeals from the decree that dissolved his marriage to Andreea Dunca. He contends the trial court erred in denying a continuance when he was unable to appear for trial and his counsel withdrew. But after considering the circumstances, including Dorin's decision to leave the country, his failure to comply with court-ordered support obligations that resulted in undisputed acute financial distress for his former wife, and his failure to advise the court of his financial circumstances or express any willingness to appear for an expedited trial date, the trial court did not abuse its discretion in denying a continuance and proceeding with the dissolution trial. We affirm.

Andreea and Dorin Dunca were married in 2003 in Bucharest, Romania. The couple have three children, who were 12, 9, and 2 at the time of the

dissolution trial. Dorin[1] is a telecommunications engineer who earned approximately $146,000 in 2015. Andreea is a mortgage loan assistant who is currently earning about $40,000 per year.

On May 19, 2016, Andreea filed a petition for dissolution of the marriage. Both Andreea and Dorin were represented by counsel.

On June 8, 2016, the trial court entered temporary orders requiring Dorin to pay monthly child support of $3,696.75 and restraining both parties from "transferring, removing, encumbering, concealing or in any way disposing of any property except in the usual course of business or for the necessities of life." The court also ordered Dorin to pay 69 percent of the medical expenses for the youngest child, who has special medical needs.

The court permitted Andreea to live in the family home and ordered Dorin to pay "the mortgage, taxes, insurance and HOA fees" on the home. Based on Andreea's need and Dorin's ability to pay, the court awarded Andreea $3,000 in attorney fees. The temporary restraining order prohibited Dorin from coming within 500 feet of the family home or Andreea's workplace, except for purposes of exchanging the children for residential time. The superior court denied revision on August 5, 2016.

On October 17, 2016, Andreea learned that Dorin had quit his job and traveled to Romania. Dorin informed his children by e-mail that he had moved to

---

[1] For purposes of clarity, we use the parties' first names.

Romania. T-Mobile, Dorin's former employer, notified Andreea that the company no longer provided medical insurance for her and the children.

On October 18, the court entered an ex parte restraining order, halting Dorin's visitation with the children. The court set the return hearing for November 3. Dorin's attorney, who was present at the ex parte hearing, filed a notice of withdrawal on the following day, October 19.

On November 3, the trial court entered an order "freez[ing]" certain specified financial accounts. If the financial institutions were unable to freeze the accounts, the court ordered Dorin to provide a full accounting and transfer "all liquid funds" into the trust account of Andreea's attorney. The court's order noted that Dorin's attorney was present at the October 18 hearing and had received notice of the November 3 hearing before withdrawing.

On November 4, 2016, Andreea moved to have the trial court change the April 17, 2017 trial date and schedule a trial as soon as possible. In a supporting declaration, Andreea stated that Dorin had left the country and likely would not return. Andreea alleged that because Dorin had stopped paying all court-ordered support obligations, including child support and mortgage payments, she faced an imminent threat of bankruptcy. Andreea also submitted evidence indicating that Dorin had been liquidating the accounts identified in the court's November 3 order.

On November 15, the trial court granted Andreea's motion and rescheduled trial for November 30, 2016. On the same date, attorneys Michelle

Dellino and Hugo Johnson of the Dellino Law Group entered a notice of appearance on Dorin's behalf.

On November 28, Dorin moved to continue the new trial date. Counsel stated that they had a conflict for the trial date and needed time to adequately prepare for trial. In a supporting declaration signed on November 22, Dorin acknowledged that he had recently moved to Romania. Neither Dorin's motion nor his supporting declaration addressed Dorin's failure to pay his court-ordered support obligations or liquidation of the accounts identified in the November 3 order. Both counsel and Dorin asked the court to reinstate the original trial date of April 17, 2017.

In her response to Dorin's motion, Andreea recited in detail the financial hardship that Dorin's actions had caused. She also identified certain accounts that Dorin had liquidated and transferred to Romania, in violation of the November 3 court order. Andreea informed the court that Dorin had declined her offer of a continuance in exchange for his payment of the outstanding support obligations. Andreea asked the court not to delay the trial more than 1 to 2 weeks and to condition any continuance on Dorin's compliance with the November 3 court order.

On November 29, the trial court denied Dorin's motion to continue the trial date.

Dorin moved for reconsideration, and the trial court heard argument on the motion when the parties appeared for trial on November 30. Rachel Broderick from the Dellino Law Group advised the court that she was "standing in" for

-4-

Dorin's two "attorneys of record" from the firm, who were out of town. Broderick explained that the firm had not yet reviewed the discovery or financial information and that "at this point we're just not ready to go through with trial today, especially since the attorneys of record just aren't here and couldn't make it." Broderick asserted that Dorin had just gotten a job in Romania and "does want to try and make an effort and fix things."

When the court asked Broderick to address Dorin's liquidation of various accounts and his failure to transfer the funds to a trust account, she responded that "[w]e really would like time to try and figure out a plan with Mr. Dunca," but acknowledged she was unaware of any offer by Dorin to return the funds.

The trial court denied reconsideration:

Under those circumstances, where it seems unrebutted that [Dorin] left relatively abruptly to return to Romania and that he liquidated accounts in violation of [a] court order and that he failed to transfer funds in violation of a second court order, that I can't put very much weight to his representations that he's looking for a job and he will try to do better.

So I think under those circumstances I do see something of an emergency. The medical care issue [for the youngest child] is, I think, a significant issue. . . .

I can see that there is a need to establish some level of support here, certainty here or finality here. And that your client, given the circumstances, of absenting himself and the manner in which he proposes to address this family's needs doesn't allow me to put a great deal of weight on his representations that he is undertaking to find some other financial way of dealing with this.[2]

---

[2] Report of Proceedings (November 30, 2016) at 11-12.

Counsel for Dorin then moved to withdraw. The court granted the motion, noting that counsel "is here on behalf of Mr. Dunca at the beginning of this trial."

The case proceeded to trial, and the court entered a final dissolution decree and related orders. The court awarded Andreea $15,000 in attorney fees based on the following findings:

> The court finds an award of $15,000 i[s] appropriate based not only on need vs. ability to pay, but Dorin Dunca's bad faith, and intransigence, which has cost Andreea Dunca thousands of dollars in attorney fees and which will likely cost her more in enforcing this order. The court finds that Dorin Dunca's fleeing of the country, hurt Andreea Dunca financially, left her with no other choice than to file numerous motions to protect her interest as best she could, and is prima facie evidence of bad faith litigation. The court finds Dorin Dunca is in standing violation of multiple court orders, including support orders, the parenting plan, and orders concerning restraints on finances as well as orders requiring him to disclose his accounts and turn over funds to Andreea Dunca's attorney for safekeeping until trial.[3]

Dorin appeals.

## Continuance

Dorin contends the trial court erred by denying his motion for a continuance and motion for reconsideration. He argues the court failed to consider the prejudice resulting from his inability to be present at trial and the denial of an opportunity to be represented by counsel.

The trial court has broad discretion to grant or deny a trial continuance, and we review its decision only for a manifest abuse of discretion.[4] When exercising its discretion, the court may properly consider:

---

[3] Clerk's Papers 18.
[4] Trummel v. Mitchell, 156 Wn.2d 653, 670, 131 P.3d 305 (2006).

the necessity of reasonably prompt disposition of the litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation, including prior continuances granted the moving party; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court.[5]

The trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or done for untenable reasons.[6]

Dorin claims that the trial court should have granted a continuance because he had only recently retained counsel on November 15, 2016, and the trial was rescheduled from April 17, 2017 to November 30, 2016. Dorin also asserts, without citation to the record, that he was "unable to attend the new trial date on such short notice."

But Dorin's arguments, both in the trial court and on appeal, completely ignore the circumstances surrounding Andreea's request to expedite the trial date. The record before the trial court was undisputed that Dorin had suddenly moved to Romania without notice and stopped paying all of his court-ordered obligations, including child support, mortgage payments, and medical expenses for the children. Dorin violated two court orders when he liquidated several accounts and failed to transfer the proceeds to a trust account. In seeking a continuance, Dorin did not challenge Andreea's contentions that his abandonment of support obligations caused her significant financial distress, including the risk of bankruptcy and foreclosure of the family home. The trial

---

[5] Id. at 670-71.
[6] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

court's findings that Dorin violated multiple court orders and caused Andreea financial harm are unchallenged on appeal.

Nor does the record support Dorin's claim that he was "merely asking the court for a brief continuance, to allow his counsel to be able to appear and represent his interests." Counsel for Dorin learned of the November 30 trial date on November 15, the day they filed their notice of appearance. Andreea provided her proposed trial exhibits to opposing counsel on November 21. But counsel waited until November 28 to request a continuance and inform the court that they had a conflict for the scheduled trial date. Counsel did not inform the court how long they might need to prepare or when counsel would next be available for a trial. Rather, without any further explanation, counsel asked the court to reinstate the original trial date of April 17, 2017.

In his supporting declaration, Dorin also asked the court, without further explanation, to reinstate the original trial date. Dorin provided no meaningful information on his financial circumstances or ability to appear for trial. Nor did he indicate how he intended to comply with his support obligations. Dorin also declined Andreea's offer of a continuance conditioned on Dorin's payment of his support obligations.

A party's ability to appear personally and counsel's decision to withdraw are not controlling, but factors the court should consider when determining whether to grant a continuance. In Odom v. Williams,[7] the defendant failed to

---

[7] 74 Wn.2d 714, 446 P.2d 335 (1968).

appear for the first day of a jury trial, and his counsel orally moved for a continuance, based in part on the defendant's alleged illness. When the trial court denied a continuance, the defendant's counsel withdrew, and the trial proceeded. Citing, among other things, the untimeliness of the motion, the defendant's actions that delayed scheduling the trial, the defendant's "deliberate absence" from the trial, the potential hardship to the other side and its witnesses, and counsel's inability to predict when the defendant might be available for trial, our Supreme Court held that the trial court did not abuse its discretion in denying a continuance.[8]

Here, the trial court considered, among other things, the belated nature of the motion, Dorin's undisputed failure to comply with support obligations and his responsibility for Andreea's resulting financial harm, Dorin's failure to address his support obligations, and counsel's failure to advise the court of the time needed to prepare for trial or indicate any availability for trial before the originally scheduled trial date. Under the circumstances, the court reasonably determined that Andreea's financial need presented an emergency and that she needed stability and finality in order to address the situation. The court did not abuse its discretion in denying Dorin's motion for a continuance.

Because Dorin challenges only the trial court's denial of a continuance, we do not address the provisions of the dissolution decree.

---

[8] Id. at 717-18.

Andreea requests an award of attorney fees on appeal for Dorin's intransigence. Dorin has not challenged the trial court's award of attorney fees for intransigence, and "a party's intransigence in the trial court can also support an award of attorney fees on appeal."[9] But Andreea does not demonstrate any intransigence on appeal, or that the earlier intransigence affected the narrowly framed assignment of error. Accordingly, we deny Andreea's request for attorney fees on appeal.

Affirmed.

*Cox, J*

WE CONCUR:

*Spearman, J.*     *Leach, J.*

---

[9] In re Marriage of Mattson, 95 Wn. App. 592, 606, 976 P.2d 157 (1999).