# CASES

# SUPREME COURT

OF

# WASHINGTON

[No. 15002.   Department One.   January 6, 1919.]

EDWARD BURKE, *Respondent,* v. E. E. MAYER *et al.,*
*Appellants.*[1]

EVIDENCE (167) — PAROL AFFECTING WRITINGS — FRAUD.   In an
action for fraudulent representations inducing a trade by plaintiff,
who could neither read nor write, evidence relating to the condi-
tions under which the instruments were executed is not inadmis-
sible as varying the terms of the written contracts.

FRAUD (7, 8, 22)—RELIANCE ON REPRESENTATIONS AND RELATIONS—
EVIDENCE—SUFFICIENCY.   Where plaintiff, an old man who was deaf
and could neither read nor write, was induced by his confidential
agent to make a trade for land belonging to the agent, who con-
cealed his interest in the transaction, plaintiff may rely on repre-
sentations as to the condition of the lands received in the trade
and that they were under irrigation from ditches pointed out, not-
withstanding that he visited the land and might have ascertained
its true condition and value.

Appeal from a judgment of the superior court for
Spokane county, Carey, J., entered February 27, 1918,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action for fraud.   Affirmed.

*D. R. Glasgow* and *A. O. Colburn,* for appellants.

*Ayers, McDonald & Greenough* and *Del Cary Smith,*
for respondent.

[1]Reported in 177 Pac. 662.

TOLMAN, J.—This is an action for fraud and deceit, tried to a jury, resulting in a verdict and judgment in favor of respondent, who was plaintiff below. There was much conflict in the testimony, the record is long, and, so far as necessary for an understanding of the case, a sufficient statement is that there was evidence from which the jury found, or might have found, the following facts: That respondent, at the time of the trial below, was about eighty years old, uneducated, not able to read or write, save to sign his own name, and so deaf that he could not hear or understand an ordinary conversation; that, for some years, he had owned a half section of wheat land in Lincoln county, Washington, alleged in his complaint to be worth not less than $8,000, and conceded by the answer to be worth $6,400, on which there was a mortgage for $1,725. Appellant E. E. Mayer, hereinafter referred to as appellant, who owned land adjoining respondent's farm in Lincoln county, had for some years leased respondent's land and looked after all of his business affairs for him with reference to the land, such as paying interest on the mortgage, paying taxes, etc., and making settlement for the proceeds of respondent's share of the crop after deducting such payments. Respondent, being a resident of Minnesota, came to Washington but infrequently, and the correspondence tends to show that he relied absolutely upon appellant with respect to all business matters touching his farm, and that the relations between the parties became confidential.

In the latter part of the year 1912, appellant advised respondent that he did not care to rent his land any longer, that he had disposed of his own land, having traded a half section of it for a ten-acre tract of land near Vera, in the Spokane valley, and suggested that

he could procure a like trade for respondent. Appellant took the respondent to the Vera tract, showed him the land, the irrigation ditches running beside it, represented that the ditches were appurtenant to the land, and that the land had a water right and was under irrigation from these ditches. He also showed to respondent what he claimed to be the ten-acre tract adjacent for which he had traded his own wheat land. Appellant represented that the ten-acre tract was worth as much as or more than respondent's wheat land, that it would bring him more income than his wheat land, and suggested that he might be able to make a trade for respondent by which the latter would exchange his wheat land for the ten-acre tract shown him, subject to a first and a second mortgage aggregating $1,500, and receive $1,500 in cash as boot money; and to further induce respondent to make the trade, agreed to lease the ten-acre tract from respondent when he should acquire title, and pay him $500 per year rent for a period of four years. The trade was consummated on March 8, 1913. But it now appears that appellant himself owned the ten-acre tract at Vera which in the trade was conveyed to respondent, and he himself took title to the wheat ranch which formerly belonged to respondent, so that, by having obtained a deed in blank from his grantor and inserting respondent's name therein as grantee, and by obtaining a deed to the wheat land from respondent in blank, in which he afterwards inserted his own name, he appears to have been able to conceal from respondent the true facts as to his personal interest in the transaction. And respondent claims that he was all the time relying upon appellant's friendship for him and supposed unselfish interest in his affairs to protect him in the transaction. There is evidence that

respondent took a disinterested friend to see the tract at Vera shortly after the deal was made, and that this friend learned that the Vera land had no water right and was unirrigated, or what is known as dry land. That respondent then learned this fact, or any fact tending to put him on inquiry, as to the falsity of the representations as to the land being irrigated, or at all, until shortly before the bringing of the action, he squarely denies.

After closing the trade, a written agreement was entered into between appellants and respondent by which respondent turned over to appellants the possession of the Vera tract for a period of four years, the consideration being that appellant should pay off the $1,500 secured by mortgages on the tract, the interest thereon, and all taxes assessed against the property during the life of the contract, and in which an option was given to appellants to purchase the tract by paying to respondent the sum of $5,500 in excess of the encumbrances upon the property. And in pursuance of this contract, respondent gave to appellant a deed of the Vera tract. Much evidence is introduced as to whether or not the boot money was fully paid, and how it was paid, if at all; but appellant claims to have paid all the boot money, and also to have paid $500, representing the first year's rental of the Vera tract.

Respondent returned to Minnesota, and again came to Spokane near the close of the year 1913, and seems to have thought there was more money coming to him from appellant; or not to have been satisfied with the time and manner of payment, and to have desired more money from appellant. There were negotiations at that time resulting in the signing of a written instrument, dated January 3, 1914, purporting to cancel

and discharge the lease and option agreement entered
into on April 12, 1913, and appellant returned to re-
spondent the deed which he had given him conveying
the Vera tract, which had never been recorded; and to
secure an advance of $270, respondent executed a
mortgage for that amount, which became a third mort-
gage upon the Vera tract. This mortgage, together
with the second mortgage for $500, which he pur-
chased and had assigned to him, appellant afterwards
foreclosed, thus obtaining title to the Vera tract. Re-
spondent again returned to his home in Minnesota, but
upon coming to Washington in 1916, claims to have
discovered for the first time that the Vera tract had
no water right, was not irrigated, and was of compara-
tively little value, and that the representations as to
the rental value were false and made for the purpose
of inducing the transfer. And also, at about the same
time, to have discovered that the trade was made by
appellant in his own interest, instead of acting as the
agent of respondent in procuring a trade with a third
person as respondent had believed.

Appellants made twenty separate assignments of
error, and it is manifestly impossible to set forth and
discuss each one within reasonable limits. We shall,
therefore, confine ourselves to the comment necessary
to dispose of the particular assignments which are
argued, and upon which reliance is chiefly placed.

I. It is claimed that the trial court erred in per-
mitting the introduction of evidence to vary the terms
of the written instruments hereinbefore referred to as
the lease and option and the later cancellation agree-
ment. Respondent, who testified that he could neither
read nor write, claims that, if the instruments were
read to him, he did not know or understand their con-
tents, and that they were represented to him to be

something other than what they were. In an action sounding in fraud, such as this, it is for the jury to say from the instruments, and from all of the evidence relating to the conditions under which they were executed, whether respondent executed them with knowledge of their contents, and, also, whether the instruments, though legally executed and fair on their face, were part of a general scheme to defraud.

II. It is contended that the court should have sustained appellants' motion for a directed verdict and for judgment *non obstante veredicto,* because respondent had access to the Vera land before making the trade, and knew, or could have learned by reasonable inquiry, its true condition and value, or at least should have learned all such facts shortly after the trade was consummated; and further erred in refusing certain instructions proposed by appellants upon this theory. It may be conceded that, if respondent had been a thoroughly equipped business man in the possession of all of his faculties, and dealing with a stranger at arm's length, the argument presented would have considerable force. But when the age, lack of education, and deafness of respondent are considered, and more especially when the evidence as to the confidential relation upon which respondent relied is borne in mind, we are convinced that the trial court properly submitted to the jury all of these questions. We have carefully read the abstract and supplemental abstract of the record, and have read the record itself upon the points suggested by appellants, and are convinced that the case was as fairly tried as it well could be under the circumstances which then existed; that the jury was properly instructed upon the law; that none of appellants' assignments of error are well founded; that the real issues were of fact only, and that there

exists no ground upon which we can interfere with the verdict.

Judgment affirmed.

MAIN, C. J., MACKINTOSH, MITCHELL, and CHADWICK, JJ., concur.