

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 73354-1-I |
| | ) | |
| JENNIFER YONG LUNA, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| NEAL HAROLD LUNA, | ) | FILED: March 7, 2016 |
| | ) | |
| Appellant. | ) | |

APPELWICK, J. — The trial court on revision determined that a child's participation in scouting activities was not a major decision and was not subject to the joint decision making and dispute resolution provisions of the parenting plan. This was error, but does not warrant reversal. The trial court concluded that scouting was not an agreed activity for purposes of the child support order. This was not an abuse of discretion. We affirm.

## FACTS

Jennifer Yong Luna and Neal Luna were married in February 2004. They had two sons, L.L. and E.L. On September 5, 2013, Jennifer[1] filed a petition for dissolution of marriage, alleging that the marriage was irretrievably broken. Prior

---

[1] We refer to the parties by their first names for clarity. No disrespect is intended.

to the entry of a divorce decree, on June 2, 2014, the parties agreed on a final parenting plan. At the time the parenting plan was entered, L.L. was five and E.L. was three.

Under the parenting plan, the sons reside with each parent equally. Jennifer has residential time every Tuesday after school until Thursday after school. Neal has residential time every Monday after school until Tuesday after school and every Thursday after school until Friday after school. Jennifer and Neal alternate weekends. Each parent makes decisions regarding the day-to-day care and control of each child while the child is residing with that parent. But, decisions about education, nonemergency health care, religious upbringing, work related day care, and extracurricular activities are to be made jointly. The parenting plan also provides that disputes between the parties, other than child support disputes, must be submitted to mediation. And, the plan notes that if the court finds that a parent used or frustrated the dispute resolution process without good reason, the court should award attorney fees and financial sanctions to the other parent.

After the parenting plan was entered, on June 27, 2014, Jennifer and Neal participated in a settlement conference with King County Superior Court Judge Mariane Spearman. At the settlement conference, the parties worked to resolve financial issues. The parties were successful, and they signed a CR 2A Agreement (Agreement). The Agreement mandated that Jennifer would pay $1,300.00 in child support per month.

Afterward, counsel for Jennifer and Neal worked on drafting final orders—including the child support order. The parties resolved all but three issues in the final drafting of the orders. One of the drafting issues involved one specific paragraph of the Agreement, "Proportionate Share of Expenses: Neal's proportionate share of expenses will be set at 30% and Jennifer's set at 70%. This shall include uninsured health care expenses, work-related child care expenses, and agreed activity expenses."

On August 27, 2014, counsel for both parties wrote to Judge Spearman. Neal's letter noted that pursuant to the Agreement, Judge Spearman had the authority to arbitrate the disputed issues. Neal urged Judge Spearman to clarify what school and activity expenses are shared and to include a dispute resolution provision to provide the parties an efficient method for resolving any future disputes over child expense issues. Neal argued that basic child support does not include specialized equipment for activities, musical instruments, and the like. He argued that when the parents have agreed that the children will participate in an activity, the associated expenses should be shared as should mandatory school fees.

Jennifer's letter asserted that the issues were not subject to arbitration. She argued that the arbitration clause of the Agreement did not permit Neal to add provisions which further obligate her to pay a 70 percent contribution toward expenses never previously discussed. She claimed that each party should pay for the clothing and equipment necessitated by the activity in which they want the children to participate. She noted that if both of them wanted the children to

participate in a particular activity, they presumably can also agree upon what items the children would need and how the related expenses would be shared. Specifically, she stated, "[A]n agreed-upon sharing of expenses is implicit in the words, 'agreed activity expense' because if Jennifer doesn't want to pay 70% of, for example, a snowboard, helmet, ski jacket etc., she would not agree that the child take up snowboarding." Finally, she noted that if Judge Spearman found that the outstanding issues were subject to arbitration, she should adopt the language of the Agreement without Neal's proposed modifications.

On September 3, 2014, Judge Spearman issued a letter ruling. In the ruling, Judge Spearman stated that in the Agreement, the parties had agreed that activity expenses would be paid proportionately. But, she noted that the Agreement did not mention the arbitration of disputes over activity expenses or the cost of education expenses. She concluded that because the disputes concerning the payment of required school expenses or the insertion of an arbitration clause are not drafting issues that were encompassed by the Agreement that she would decline to address those issues. By contrast, she noted:

> The payment of clothing and equipment for agreed activities is an issue that was discussed as part of the CR2A. It is reasonable that the expenses for clothing and equipment for agreed upon activities should be paid by the parents proportionate to their incomes. Children cannot be expected to participate in sports or other activities without the appropriate clothing and equipment. If the mother does not wish to take on this additional cost, she need not agree to the children's participation in the activity.

Shortly thereafter, on September 17, a divorce decree and a final order of child support were entered. As was agreed upon in the CR 2A Agreement, the

4

child support order required Jennifer to pay $1,300.00 per month in support based on her monthly net income of $10,050.66 and Neal's monthly income of $4,334.08. The child support order also included a provision for expenses not included in the $1,300.00. It stated:

> The petitioner shall pay 70% and the respondent 30% (each parent's proportional share of income from the Child Support Schedule Worksheet, line 6) of the following expenses incurred on behalf of [L.L. and E.L.]:
>
> - Work-related child care expenses
> - Agreed activity expenses and expense for related clothing and equipment (e.g., uniforms, specialized sports equipment and clothing, musical instrument)
> - School tuition (for preschool and public school kindergarten and for agreed private school after kindergarten)

On May 16, 2014, before either the parenting plan or the child support order was entered, Jennifer and Neal began discussing L.L.'s potential participation in Cub Scouts. Jennifer had taken L.L. to a Cub Scouts event earlier that week. Jennifer communicated with a leader of a local Cub Scouts "pack" and learned that Cub Scouts for L.L. would begin in the fall, meetings would take place on the first Thursday of each month, and that L.L. and his family were invited to a barbecue on a Monday in June. Jennifer wrote to Neal,

> It seems like [L.L.] would like cub scouts. We can register him for the fall and see how he likes it. The meetings are on Thursday evenings so you would have to take him. You will need to ask someone to look after [E.L.]. I would also like to attend the functions as long as you do not mind that I am there as well.

5

Months later, on September 3, 2014, the same day that Judge Spearman issued her letter ruling, Jennifer e-mailed Neal stating, "Since the meetings for cub scouts will be on Thursday nights, it is unfortunate that I will not be involved with this activity with [L.L.]. I will not agree to this extra-curricular activity expense." The next day, Neal responded and asked Jennifer to clarify whether she was saying that L.L. could not participate in Cub Scouts or that she would not agree to pay a proportionate share. He asked if she was willing to pay any part of the expenses. He also noted that it is possible that the Cub Scouts meetings could change over time and that there would be activities and other projects which may fall during Jennifer's residential time. After receiving no response to his e-mail, Neal again e-mailed Jennifer on September 9 noting that the first Cub Scouts meeting was coming up that Thursday. That day, Jennifer responded, "[L.L.] can participate in scouting but I will not pay for this extracurricular activity. The meetings will fall on your residential time so this is an activity for you and [L.L.] to do together. If an event happens to fall on my residential time, I am more than happy to bring him and participate."

Notwithstanding Jennifer's refusal to pay a proportionate share of the Cub Scouts fees, Neal paid L.L.'s Cub Scouts dues on September 25 so that L.L. could participate.[2] On September 30, Neal contacted one of the mediators designated in the parenting plan and requested mediation on two issues, including whether Jennifer is required to pay her proportionate share of expenses related to Cub

---

[2] On October 3, Neal also paid for L.L.'s Cub Scout uniform and necessary supplies.

Scouts. That same day, Neal e-mailed Jennifer and asked her to respond with dates and times that she would be available to participate in mediation. On October 6, Jennifer responded and told Neal that her attorney would handle the issue, but that she was out of the country until late October.

On October 31, Jennifer's attorney wrote a letter to Neal's attorney regarding the Cub Scouts expenses. The letter stated that Jennifer would not contribute to the expenses Neal incurs for L.L.'s Cub Scouts activities, because Cub Scouts was not an agreed upon activity. It stated that although prior to the entry of the child support order and before Jennifer was provided with L.L.'s Cub Scouts schedule (that meetings would take place on Thursdays such that Jennifer cannot attend), she had agreed that L.L. could attend, she does not agree to pay for costs associated with the activity. The letter further stated that, because this was strictly an issue of payment for L.L.'s extracurricular expenses, under the terms of the child support order and parenting plan, it was not subject to mediation.

Neal's attorney responded:

> With regard to the Cub Scout issue, we clearly have a different interpretation of the orders. The parenting plan makes extracurricular activities a joint decision and provides for mediation for issues subject to joint decision-making that cannot be resolved. The order of child support requires the parties to share the cost of activities. My understanding [of the] e[-]mail strings between the parties that I have reviewed is that Jennifer has agreed that [L.L.] can participate in Cub Scouts. She has even stated that she will participate with [L.L.] in Cub Scout activities that occur during her residential time. Jennifer apparently wants to create a subcategory of "conditionally agreed" activities, where she agrees to the activity only if Neal pays. But that approach is not consistent with the orders. Either she agrees to [L.L.]'s participation in Cub Scouts, in which case she is obligated to pay her share; or she does not agree with

his participation, in which case the issue is subject to dispute resolution (mediation and, if still not resolution, a motion to the court).

Jennifer's attorney responded and referred to Judge Spearman's letter ruling, and claimed that because this is not an issue of whether L.L. may participate in the activity, but a payment issue under the child support order, that it is not subject to mediation.

On November 20, Neal paid additional Cub Scouts dues. And, because L.L. was actively participating in Cub Scouts during this period, on November 23, Neal e-mailed Jennifer to ask about a Cub Scouts event that would be taking place on her time. He asked Jennifer whether she would be willing to take L.L. to a winter camp that most of L.L.'s "pack" was going to attend. Neal e-mailed Jennifer again on December 15 to follow up, because Jennifer had not responded to the e-mail. On December 18, Jennifer responded that she could not discuss the Cub Scouts activity, because Neal was threatening litigation about it.

On January 12, 2015, Neal filed a motion entitled "Amended[3] Motion and Declaration for Clarification and Enforcement of Parenting Plan and Child Support Order." The motion: (1) sought clarification of what child activities are subject to joint decision-making and therefore subject to dispute resolution if the parents cannot agree; (2) clarification that the parties are required to share the expense of joint decision-making child activities, pursuant to dispute resolution, including mediation or motion to the court; (3) orders that L.L. may participate in Cub Scouts,

---

[3] Neal states that he filed an amended motion after withdrawing his original motion, because he realized the timing of his original motion would require Jennifer to respond over the Christmas holiday.

that Jennifer must make her best effort to facilitate L.L.'s participation in Cub Scouts, and that mediation is waived regarding Cub Scouts in light of Jennifer's refusal to participate in mediation and the need for timely resolution; (4) orders requiring Jennifer to pay her proportionate share of Cub Scouts expenses; and (5) orders requiring Jennifer to pay attorney fees and costs.

Jennifer submitted a declaration in opposition to Neal's motion. Jennifer argued that Neal failed to distinguish between a "major decision" regarding "extracurricular activities" under the parenting plan and "agreed activity expenses" under the order of child support. She noted that the issue raised by Neal is a child support dispute, not a parenting plan dispute requiring dispute resolution. And, she claimed that she did not agree to pay for L.L.'s participation in Cub Scouts so it was not an agreed activity for purposes of the child support order. She asserted that under the parenting plan, Cub Scouts is neither a major decision nor an extracurricular activity. Finally, she argued that she should be awarded all of her attorney fees and costs pursuant to RCW 26.18.160 as the prevailing party.

On January 28, 2015, Neal's attorney filed a declaration supporting a request for attorney fees in favor of Neal in the amount of $4,657.98. Similarly, Jennifer's attorney filed a declaration seeking attorney fees on January 29, 2015 in the approximate amount of $6,536.48.

On January 30, 2015, the parties appeared before King County Superior Court Commissioner Bonnie Canada-Thurston on Neal's motion to enforce and

clarify the parenting plan and the child support order. Commissioner Canada-Thurston ruled as follows:

(1) Joint decision-making is required for extracurricular activities including Cub Scouts; joint decision-making regard[ing] activities is not limited by the words "Major Decisions."

(2) Whether a child will participate in an extracurricular activity, including Cub Scouts, is subject to dispute resolution.

(3) The mother's failure to participate in dispute resolution is excused in this instance because of the confusion related to the last sentence of Judge Spearman's 9/3/14 letter ruling so fees are not awarded on that basis.

(4) The mother did agree to the child's participation in scouting for the 2014-2015 [school year]. She did not recant her agreement. The statement that she is not willing to pay the expense is not permitted by the intent of Judge Spearman's letter, the Order of Child Support, or the parenting plan.

(5) [L.L.] shall participate in Cub Scouting for the 2014-2015 school year. Both parents shall facilitate his participation. [There is] evidence mother agreed.

(6) The parents shall pay their proportionate shares of Cub Scout expenses. The mother shall reimburse the father what is currently owing within 10 days.

(7) Jennifer Yong Luna shall pay the father or [the father's attorney] $1,000 (one thousand dollars) in reasonable attorneys' fees within 10 days of this order.

On February 6, 2015, Jennifer filed a motion for revision of Commissioner Canada-Thurston's order. She argued that Cub Scouts is neither a "major" activity nor an "extracurricular" activity rendering it subject to the dispute resolution provisions. As a result, she argued that the commissioner erred in finding that Jennifer's failure to participate in mediation was a violation of the parenting plan.

She also asserted that the commissioner erred in finding that she entered into a binding agreement that required her to pay 70 percent of Cub Scouts related expenses and that she did not recant on the "agreement" in her later e-mails and in the correspondence from her attorney to Neal's attorney. She further claimed that the commissioner erred in ruling that an activity can be an "agreed activity" under the order of child support even when there is no agreement as to the payment for the expenses associated with the activity. She maintained that the commissioner erred when ordering that she pay 70 percent of the Cub Scouts expenses and that she pay $1,000 in attorney fees.

The parties then went before Judge Richard Eadie on Jennifer's motion for revision. Judge Eadie granted Jennifer's motion for revision and vacated the commissioner's ruling. The order was simple and contained no explanation for his decision, but Judge Eadie's reasoning was clear from his oral ruling. Judge Eadie was unpersuaded by Jennifer's argument that Cub Scouts is not considered an extracurricular activity. But, he adopted Jennifer's proposed definition of "major" and reasoned that the word "major" means an activity that affects the child's health, safety or welfare, or significantly affects the other parent's residential time. Following this definition, Judge Eadie reasoned that, unlike an activity such as ski lessons, Cub Scouts does not affect a child's health, safety, or welfare. He stated that, significantly and critically, Cub Scouts did not significantly affect Jennifer's residential time and it was strictly on Neal's time. He reasoned, "I don't think that this is the kind of activity that can be subjected to that formal process because it's

11

too much confined to one party or the other without putting the child at risk." And, Judge Eadie noted that there was never an agreement between Jennifer and Neal regarding Cub Scouts, because payment was an undetermined material term. He declined to award fees to either party.

Neal appeals, requesting that this court reverse and reinstate the commissioner's order.

## DISCUSSION

Neal argues that the trial court erred in revising the commissioner's correct rulings. He argues that under the terms of the parenting plan, child support order, and Judge Spearman's ruling, no option exists for Jennifer to agree to an activity, but refuse to pay for it. He notes that otherwise Jennifer could pay only for her chosen activities and evade the parties' proportionality agreement in the child support order.

When the trial court reviews a commissioner's ruling, it reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner. RCW 2.24.050; In re Marriage of Fairchild, 148 Wn. App. 828, 831, 207 P.3d 449 (2009). Once the trial court makes a decision on review, the appeal is from the trial court's decision, not the commissioner's. Id. Here, the trial court granted Jennifer's motion for revision and vacated the commissioner's order. In doing so, the trial court interpreted the parenting plan, determined that Jennifer did not agree to all the material terms Neal

proposed regarding Cub Scouts, and concluded that no additional child support was triggered.

Interpreting a parenting plan or a child support order is a question of law that we review de novo. In re Marriage of Cota, 177 Wn. App. 527, 534, 312 P.3d 695 (2013); In re Marriage of Kirshenbaum, 84 Wn. App. 798, 803, 929 P.2d 1204 (1997) (applying the rules for interpreting a divorce decree to interpreting a parenting plan). Where a decree is ambiguous, a reviewing court must ascertain the intention of the court that entered the original decree, using general rules of construction. In re Marriage of Gimlett, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). Normally, the court is limited to examining the provisions of the decree to resolve issues concerning its intended effect. Id. By contrast, this court reviews a trial court's decision regarding child support for manifest abuse of discretion. In re Marriage of Mattson, 95 Wn. App. 592, 599, 976 P.2d 157 (1999). This court will uphold findings of fact supported by substantial evidence. Id.

Superior courts, in reviewing decisions of court commissioners pursuant to RCW 2.24.050[4] should enter their own findings of fact and conclusions of law into the record if they reach a different conclusion than that of the commissioner. In re Estate of Larson, 103 Wn.2d 517, 520 n.1, 694 P.2d 1051 (1985); See In re Dependency of B.S.S., 56 Wn. App. 169, 170-71, 782 P.2d 1100 (1989). A trial court must make findings of fact and conclusions of law sufficient to suggest the factual basis for its ultimate conclusions. In re Marriage of Lawrence, 105 Wn.

---

[4] RCW 2.24.050 is a statute governing revision by the superior court.

App. 683, 686, 20 P.3d 972 (2001). A trial court's failure to enter findings of fact and conclusions of law requires remand to the trial court for formal entry of written findings and conclusions unless the record is adequate for review. Just Dirt, Inc., v. Knight Excavating, Inc., 138 Wn. App. 409, 416, 157 P.3d 431 (2007). Here, the trial court's oral ruling contains findings of fact and conclusions of law sufficient for our review. And, neither party claims that the trial court's failure to enter written findings of fact and conclusions of law was error.

## I. Agreed Activity Expenses

We first consider the meaning of "agreed activity expenses" in the child support order. The relevant provision of the child support order states that Jennifer shall pay 70 percent of the expenses for "[a]greed activity expenses and expenses for related clothing and equipment (e.g., uniforms, specialized sports equipment and clothing, musical instrument)" and Neal shall pay 30 percent.

Neal argues that because Jennifer agreed to L.L.'s participation in Cub Scouts that Cub Scouts expenses are necessarily "agreed activity expenses" which she needs to pay.[5] Neal argues that no option exists for Jennifer to agree to the activity, but refuse to pay for it. By contrast, Jennifer argues that interpretation of this phrase is unnecessary, because factually, the parties either agreed or did not agree to pay the activity expenses. But, in so arguing, Jennifer implicitly advances her own interpretation of this phrase. She essentially argues

---

[5] Neal argues that the evidence does not support the trial court's finding that Jennifer never agreed to allow L.L. to participate in Cub Scouts. But, the trial court never found that Jennifer did not agree to allow L.L. to participate in Cub Scouts.

that the word "agreed" modifies the phrase "activity expense" such that each party must agree to the specific activity expense before he or she is bound to proportionate payment under the child support order.

"Agreed activity expenses" was included in the parties' CR 2A Agreement. The parties then had the benefit of Judge Spearman's interpretation of "agreed activity expenses" in her letter ruling before they agreed on the final child support order. And, that phrase was later incorporated, unchanged into the child support order. In her letter ruling, it is clear that Judge Spearman interpreted the phrase to mean that the parties were to share payment of expenses for "agreed activities"—not only agreed expenses. There is nothing in the record suggesting that the parties intended to adopt a different meaning of the phrase in their child support order than the meaning Judge Spearman attributed to the phrase in her letter ruling. We adopt that meaning. Under the child support order, if the activity is an "agreed activity," the expenses are automatically shared proportionately. If it is not an "agreed activity," the expenses are not apportioned.[6]

## II. Extracurricular Activities and Agreed Activity

Neal also argues that the trial court erred when it reasoned that only "major decisions" regarding extracurricular activities are governed by the parenting plan and are subject to joint decision making.[7]

---

[6] Any dispute about the amount to be apportioned is resolved by the court under RCW 26.19.080(4), not the dispute resolution provisions of the parenting plan. The court reviews the necessity for or reasonableness of the expense. Id.

[7] Jennifer argues that whether participation in Cub Scouts is a "major decision" requiring joint decision making is a moot issue, because L.L. has been allowed to participate in Cub Scouts and, therefore, this court is unable to provide

15

Below, the trial court concluded that Cub Scouts is not considered an extracurricular activity subject to joint decision making or dispute resolution under this provision of the parenting plan, because it is not a "major activity" or a "major decision." The trial court reasoned that because most parties cannot afford to mediate every issue, only "major activities" are subject to the provision. The trial court then adopted Jennifer's proposed definition of the word "major" and reasoned that the word "major" is an activity that affects the child's health, safety, welfare, or significantly affects the other parent's residential time. The trial court concluded that because Cub Scouts does not affect L.L.'s health, safety, or welfare, or significantly affect Jennifer's residential time, it did not constitute a major activity or a major decision.

Neal argues that by virtue of the parties including "extracurricular activities" in the "major decisions" section of the parenting plan, they have identified all extracurricular activity decisions as major decisions requiring joint decision making. We agree.

The relevant provision of the parenting plan states:

4.2 Major Decisions

Major decisions regarding each child shall be made as follows:

---

Neal any relief. Although L.L. has been participating in Cub Scouts, whether Cub Scouts is considered an extracurricular activity subject to joint decision making is still relevant to determine whether Jennifer should have agreed to mediate the issue under the parenting plan. Under the parenting plan, an attorney fee award is proper if a party frustrates the dispute resolution process. Therefore, this issue is still relevant to determine whether an attorney fee award is proper.

| | |
|---|---|
| Education decisions | joint |
| Non-emergency health care | joint |
| Religious upbringing | joint |
| Work related day care | joint |
| Extracurricular Activities | joint |

(Boldface omitted.) Allocation of decision making under parenting plans is governed by RCW 26.09.184(5):

> (a) The plan shall allocate decision-making authority to one or both parties regarding the children's education, health care, and religious upbringing. The parties may incorporate an agreement related to the care and growth of the child in these specified areas, or in other areas, into their plan consistent with the criteria in RCW 26.09.187 and 26.09.191. Regardless of the allocation of decision-making in the parenting plan, either parent may make emergency decisions affecting the health or safety of the child.
>
> (b) Each parent may make decisions regarding the day-to-day care and control of the child while the child is residing with that parent.
>
> (c) When mutual decision making is designated but cannot be achieved, the parties shall make a good-faith effort to resolve the issue through the dispute resolution process.

Therefore, RCW 26.09.184(5) recognizes three types of decisions: emergency, day to day, and allocated decisions. Allocation of decision making is done by agreement and may be an allocation to one parent exclusively or to the parents jointly. Id. Allocated decision making controls over day-to-day decision making. Id. Emergency decision making controls over both day-to-day and allocated decision making. Id.

The statute mandates that decision making must be allocated with respect to education, health care, and religious upbringing. RCW 26.09.184(5)(a). Decision making may be allocated in other areas as long as the agreement of the

parties is consistent with the criteria in RCW 26.09.187[8] and RCW 26.09.191.[9] Nothing in RCW 26.09.184 limits the allocation of decision making to only "major" activities or decisions. Nothing restricts the parties' right to allocation to specific items rather than broader categories.

Although, the parenting plan forms used in family law cases have adopted a heading entitled "Major Decisions," the heading should not be read as limiting Jennifer and Neal's authority under the statute to allocating decision making to only "major" decisions. Jennifer and Neal were (and remain) free to allocate decision making to an extremely finite issue or to a broad category, subject only to the emergency exception and to the limitations outlined in RCW 26.09.187 and RCW 26.09.191. The decision here about extracurricular activities does not implicate the criteria in those statutes nor does it involve an emergency situation.

Jennifer and Neal opted, by agreement, to allocate the broad category of "extracurricular activities" for joint decision making, and they did so without limitation.[10] They could have limited the allocation of decision making about extracurricular activities to only those activities that would affect the residential time

---

[8] RCW 26.09.187 outlines the criteria for establishing a permanent parenting plan.

[9] RCW 26.09.191 establishes restrictions in temporary and permanent parenting plans.

[10] The trial court expressed concern about all extracurricular activities being subject to formal joint decision making and the dispute resolution process, because, generally, parties do not have the financial means to fight over "these kinds of issues" in mediation. Cost is a practical limitation for the parties. However, the allocation of decision making to "other areas" is left to the discretion of the parties, not to the discretion of the trial court. The allocation is subject only to the limitations in RCW 26.09.187 and RCW 26.09.191.

of both parents, but they did not make this limitation. Here, either parent is entitled to object to an extracurricular activity even if it is to occur solely during the residential time of the other parent.[11]

Under the plain language of the parenting plan, decisions about extracurricular activities are to be made jointly. Given its ordinary meaning, Cub Scouts clearly fits the definition of "extracurricular activity." Neither parent argues otherwise on appeal. As such, decision making about Cub Scouts is subject to joint decision making. And, a dispute about participation in an extracurricular activity is subject to good faith participation in the designated dispute resolution process.[12] RCW 26.09.184(4),(5).

To the extent the trial court determined that L.L.'s participation in Cub Scouts was not a "major decision," was not subject to joint decision making, and was not subject to dispute resolution under the parenting plan, it committed legal error. However, this does not resolve whether the trial court correctly concluded that Cub Scouts was not an "agreed activity" under the child support order.

---

[11] That an activity poses a danger is an obvious reason one parent might object to an activity occurring on the other parent's residential time. The variety of potential extracurricular activities is vast and so may be the reasonable bases for objection. Of course, the parties are free to modify their allocation of decision making in the parenting plan subject to the statutory limitations if they find the current scheme unworkable.

[12] Jennifer asserts she was not obligated to go to dispute resolution, because the only issue was a monetary child support dispute. If, in fact, she stipulated that Cub Scouts is an "agreed activity" and that the only issue was monetary, she would be correct that dispute resolution was not appropriate. However, it would also be clear that she owed additional child support. This would have resulted in reversal of the trial court order and an imposition of attorney fees. The real question was whether Cub Scouts was an "agreed activity."

19

Jennifer initially proposed Cub Scouts to Neal. But, her view evolved when she realized that Cub Scouts would take place on Neal's residential time, that she would not be involved with the activity, and yet the cost would still be apportioned.[13] The trial court concluded that Jennifer's e-mail was informing Neal that there was no agreement, because all material terms were not agreed upon, because of the activity's schedule and the activity's cost. In this light, we cannot say that the trial court abused its discretion in concluding that the parties had not reached an agreement.[14] Therefore, Cub Scouts was not an "agreed activity" for purposes of the child support order.

This result may on its face seem irreconcilable with the fact that L.L. is in Cub Scouts and that Jennifer "agrees" that he can be in Cub Scouts on Neal's residential time. However, what Jennifer agreed to is different from an "agreed activity" in which both parents have a voice, participation rights, and financial obligations. As to this activity, Jennifer has waived any objection that she was entitled to raise under the decision making portion of the parenting plan. And, each parent may make decisions regarding the day-to-day care and control of the child

---

[13] The trial court noted that Cub Scouts was to occur strictly on Neal's residential time. Neal argues that there is not substantial evidence in the record supporting this finding. We need not determine whether there was substantial evidence to support the trial court's finding that Cub Scouts took place strictly on Neal's residential time. It is irrelevant to whether joint decision making and dispute resolution were triggered. And, whether Jennifer correctly believed that the activity was all on Neal's time is not relevant to whether or not she agreed with Neal's proposal.

[14] Whether an agreement was reached is a close call. Were we instead reviewing the opposite conclusion, like that reached by the commissioner, we might well under our abuse of discretion standard affirm the opposite result.

when the child is residing with that parent. RCW 26.09.184(5)(b). As a result, Jennifer has also waived any right to participate in the activity, but has no obligation under the child support order for the related expenses.[15]

III. Attorney Fees

The trial court vacated the commissioner's award of attorney fees to Neal. And, it declined to award either party attorney fees on revision. Neal argues that he is entitled to fees below and on appeal pursuant to RCW 26.18.160, the parenting plan, and RAP 18.1. We review the trial court's denial of attorney fees for abuse of discretion. In re Marriage of Moody, 137 Wn.2d 979, 993-94, 976 P.2d 1240 (1999).

RCW 26.18.160 states that in an action to enforce a support order, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees. Jennifer is the prevailing party on this issue. Therefore, Neal is not entitled to attorney fees as the prevailing party below or on appeal.

But, Neal also argues that he is entitled to attorney fees under the parenting plan. Under the parenting plan, if the court finds that a parent has used or frustrated the dispute resolution process without good reason, the court shall award attorney fees and financial sanctions to the other parent. But, the parties had two different, reasonable understandings about how the parenting plan and the child support order were to be interpreted. The court commissioner and the superior court judge also interpreted the parenting plan and child support order

---

[15] Of course, should Jennifer want to participate, the parties could revisit the decision making process.

differently. We conclude that Jennifer did not frustrate the dispute resolution process without good reason. We, therefore, decline to award Neal fees on this basis.

Jennifer argues that she is entitled to fees on appeal under RAP 18.9(a), because Neal pursued a meritless appeal and sought to mediate a child support dispute even though the parenting plan strictly exempts child support disputes. RAP 18.9(a) authorizes the appellate court, on its own initiative or on motion of a party, to order a party or counsel who files a frivolous appeal to pay terms or compensatory damages. Kinney v. Cook, 150 Wn. App. 187, 195, 208 P.3d 1 (2009). Appropriate sanctions may include an award of attorney fees and costs to the opposing party. Id.

Neal's appeal was not meritless or frivolous. In fact, Neal prevailed on his argument that Jennifer should have engaged in dispute resolution. Therefore, we decline to award fees on this basis.

We affirm.

WE CONCUR: